IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAMPAIGN LEGAL CENTER<br>1101 14th Street NW, Suite 400<br>Washington, DC 20005<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES IMMIGRATION<br>AND CUSTOMS ENFORCEMENT<br>500 12th Street SW, Stop 5009<br>Washington, DC 20536<br><br>    Defendant. | Civil Action No. 19-1020 |

**COMPLAINT FOR INJUNCTIVE RELIEF**

1. This action is brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to compel Defendant United States Immigration and Customs Enforcement ("ICE") to produce records responsive to Plaintiff's October 2, 2018 FOIA request ("Request") concerning ICE's attempts to obtain voter registration records from election officials and other agencies in North Carolina. To date, ICE has produced no documents in response to Plaintiff's time-sensitive Request and has provided no timetable for processing it. Plaintiff seeks injunctive and other appropriate relief to compel Defendant ICE to disclose the requested records as required by FOIA. 5 U.S.C. § 552.

1

## JURISDICTION AND VENUE

2. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B) and 552(a)(6)(C)(i). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

3. Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

## PARTIES

4. Plaintiff Campaign Legal Center ("CLC") is a nonpartisan, nonprofit legal organization that works to strengthen American democracy at all levels of government. Among other activities, CLC engages in local, state, and federal actions to ensure the political process is accessible to all citizens, resulting in a representative, responsive, and accountable government. As part of these activities, CLC conducts research, publishes reports and articles, and regularly provides expert analysis to the media. CLC is also involved in litigation throughout the country regarding voting rights, campaign finance, redistricting, and electoral ethics. To support these efforts and to educate the public, CLC regularly seeks information under FOIA regarding federal agency decision-making.

5. Defendant ICE is an "agency" within the meaning of 5 U.S.C. § 552(f). ICE is a component of the Department of Homeland Security ("DHS"), a department of the Executive Branch of the United States Government.

## STATEMENT OF FACTS

**A. Background**

6. On August 31, 2018, the U.S. Attorney's Office for the Eastern District of North Carolina ("USAO") issued a grand jury subpoena to the North Carolina State Board of Elections and the 44 county election boards in North Carolina (collectively, the "NCSBE").[1]

7. That subpoena sought "[a]ny and all voter registration applications and/or other documents . . . that were submitted to, filed by, received by, or maintained by the [NCSBE] from January 1, 2010, through August 30, 2018, within any of the counties in North Carolina." The documents sought by the subpoena "include[d], but [were] not limited to: (1) Standard Voter Registration Application forms; (2) Federal Post Card Applications . . . ; (3) Federal Write-In Absentee Ballots . . . ; (4) One-Stop (Early Voting) application forms; (5) Provisional Voting forms; (6) N.C. Absentee Ballot Request forms; (7) Any and all 'Admission or Denial of Non-Citizen Return Form' that were generated by the [NCSBE] or were caused to be generated by the [NCSBE] and/or the Ethics Enforcement Office; (8) Any and all Voter Registration Cancellation or Voter Revocation forms that have been generated by the [NCSBE] and/or the Ethics Enforcement Office."[2]

8. On August 31, 2018, the USAO issued another grand jury subpoena to the North Carolina Division of Motor Vehicles ("NCDMV").[3]

---

[1] Travis Fain, *Federal Subpoenas Demand 'Tsunami' of NC Voter Records*, WRAL (Sept. 5, 2018), https://bit.ly/2Qmj0qX.
[2] Subpoena issued to NCSBE by USAO on behalf of ICE ("NCSBE Subpoena"), https://bit.ly/2Q7TZAI.
[3] Travis Fain, *DMV Gets Subpoena Too in Federal Voting Inquiry*, WRAL (Sept. 10, 2018), https://bit.ly/2DMUvlp.

9. That subpoena sought "[a]ny and all North Carolina voter registration applications and supporting documents that were completed, filed, received, or maintained by the [NCDMV] from January 1, 2010, through August 30, 2018, that include one or more of the following parameters: A. Any and all applications for voter registration while applying for [NCDMV] benefits where the applicant indicated a state of birth, other than the fifty (50) United States and the District of Columbia (D.C.), or a country of birth other than the United States; B. Any and all applications for voter registration while applying for [NCDMV] benefits, where the applicant indicated that the applicant does not have a driver's license and/or a Social Security card; C. Any and all applications for voter registration while applying for [NCDMV] benefits, where the applicant indicated they are <u>not</u> a citizen of the United States; D. Any and all applications for voter registration where the applicant listed a North Carolina identification card (not a driver's license); E. Any and all applications for voter registration where the driver's license application or identification card included but was not limited to:  a. United States Citizenship and Immigration Services . . . employment authorization cards, lawful permanent resident alien cards, non-immigrant visas, non-immigrant I-94 documents, and any other documents issued by USCIS that reflect the applicant was not a United States citizen; F. Any and all applications for voter registration where the driver's license application or identification card application included but was not limited to a foreign passport or other foreign identity document; G. Any and all voter registration applications that have been denied, rescinded, revoked, or otherwise have been found to be fraudulent, incorrectly filed, ineligible, or were found to have other irregularities; and H. Any and all voter registration applications that were completed in a language other than English."[4]

---

[4] Subpoena issued to NCDMV by USAO on behalf of ICE ("NCDMV Subpoena"), https://bit.ly/2NUeeEs.

10. The deadline for production of documents in response to both subpoenas was set for September 25, 2018.[5]

11. North Carolina election officials estimated that the requests encompassed "millions of documents" and described the volume of the requests as "the most exhaustive on record" and "so massive as to be absurd."[6]

12. News reports suggested that these subpoenas were related to a continuation of the objectives of the now-defunct Presidential Advisory Commission on Election Integrity ("PACEI"), led by Vice Chair (and former Kansas Secretary of State) Kris Kobach.[7] When PACEI was disbanded, Kobach proposed that PACEI's mission and functions should be assumed by DHS.[8] ICE is a component agency of DHS that investigates allegations of illegal voting by non-citizens.[9]

13. On September 6, 2018, after discussions with North Carolina election officials, the USAO postponed the deadline for compliance with the subpoenas to January 2019.[10]

---

[5] NCSBE Subpoena at 1; NCDMV Subpoena at 1.
[6] Fain, *Federal Subpoenas*, *supra* note 1.
[7] Richard Fausset & Michael Wines, *Justice Dept. Demands Millions of North Carolina Voter Records, Confounding Elections Officials*, N.Y. TIMES (Sept. 5, 2018), https://nyti.ms/2wKuVqs; Fain, *Federal Subpoenas*, *supra* note 1.
[8] *Kris Kobach on What Led to the Disbandment of Controversial Election Commission*, NPR (Jan. 4, 2018), https://n.pr/2EaVfw4; John Wagner, *Trump's Voter Commission Is Dead, But Critics Worry Its Mission May Live on*, WASH. POST (Jan. 6, 2018), https://wapo.st/2Qme8SY.
[9] *See, e.g.*, News Release, U.S. Immigration and Customs Enf't, 19 Foreign Nationals Indicted for Illegally Voting in 2016 Elections (Aug. 27, 2018), https://www.ice.gov/news/releases/19-foreign-nationals-indicted-illegally-voting-2016-elections.
[10] Jane C. Timm, *ICE's Move to Seize Millions of Voter Records Stalled After N. Carolina Officials Balk*, NBC NEWS (Sept. 6, 2018), https://nbcnews.to/2MWREKM.

14. On September 7, 2018, the bipartisan NCSBE voted unanimously to authorize the North Carolina Attorney General's Office to move to quash the subpoenas in federal court. On that same date, the North Carolina Attorney General's Office asked the USAO to narrow the request.[11]

15. Since CLC made its Request in October 2018, the urgency of the Request has only increased. On February 6, 2019, the NCSBE informed county election boards that it would provide records pertaining to 789 voters to the USAO.[12]

16. The USAO has been aggressively targeting foreign-born residents in its efforts to unearth rare cases of voter fraud.[13] USAO and ICE's pursuit of the information sought in CLC's Request is consistent with a broader national pattern of overzealous pursuit of (largely phantom) non-citizen voting that has repeatedly resulted in federal courts overturning discriminatory conduct by government officials.[14]

### B. Plaintiff's FOIA Request and Defendant's Responses

17. On October 2, 2018, CLC submitted a FOIA request to ICE requesting documents from ICE generally, as well as the ICE Document and Benefit Fraud Task Force, related to ICE's communications with other federal agencies, external organizations, or individuals regarding ICE's attempts to acquire voter registration data from NCSBE and NCDMV. *See* Letter from CLC to ICE (Oct. 2, 2018), attached as Ex. A to Declaration of Moshe Pasternak ("Pasternak Decl.").

18. In particular, CLC sought (1) any records related to the request for voter data issued to NCSBE and/or NCDMV by the USAO on behalf of ICE, including communications and other

---

[11] Lynn Bonner, *The Trump Administration Will Get Files on 789 North Carolina Voters*, Charlotte Observer (Feb. 6, 2019), https://bit.ly/2Cx2Tm5.
[12] *Id.*
[13] *Id.*
[14] *See, e.g.*, *Texas LULAC v. Whitley* (W.D. Tex., No. 5:19-cv-00074); *New York v. Dep't of Commerce* (S.D.N.Y., No. 1:18-cv-02921).

documentation related to plans for the use of such data; (2) documents related to "voter fraud," "illegal voting," and "non-citizen voting"; and (3) communications that mention or were sent to or from PACEI or its members: Vice President Mike Pence, Kris Kobach, Hans von Spakovsky, J. Christian Adams, Connie Lawson, Bill Gardner, Ken Blackwell, Christy McCormick, David Dunn, Mark Rhodes, and Alan King. Pasternak Decl., Ex. A at 4.

19. The Request sought documents for the time period from May 11, 2017—the date of PACEI's formation—to the present. *Id*.

20. CLC requested that any search, review, or duplication fees associated with its FOIA request be "without any charge or at a [reduced] charge" pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II)-(III), (iii). CLC sought these waivers because it has no commercial interest in the information, will use the information to inform the public about the operations of government, and qualifies as a representative of the news media. *Id.* at 4–5.

21. CLC also sought expedited processing of its request because there is an "urgency to inform the public" about the "actual or alleged Federal Government activity" covered by the Request, and CLC is an organization "primarily engaged in disseminating information," pursuant to 5 U.S.C. § 552(a)(6)(E) and 6 C.F.R. § 5.5(e)(ii). Further, the requested records involve "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 6 C.F.R. § 5.5(e)(iv). *See* Pasternak Decl., Ex. A at 6–7.

22. CLC has followed up five times with ICE's FOIA office, but has yet to receive any documents.

23. On December 3, 2018, CLC emailed ICE-foia@dhs.gov requesting an update on the status of the Request. CLC did not receive a response. *See* Email from Moshe Pasternak to ICE (Dec. 3, 2018, 9:07 A.M.), attached as Ex. B to Pasternak Decl.

24. On December 7, 2018, CLC emailed ICE-foia@ice.dhs.gov and again requested an update on the status of the Request. Mo Pasternak, Program Assistant at CLC, called ICE's FOIA office at (866) 633-1182 to inquire about the status of the request, but received no response. *See* Email from Moshe Pasternak to ICE (Dec. 7, 2018, 10:37 A.M.), attached as Ex. C to Pasternak Decl.

25. On December 7, 2018, ICE contacted CLC, acknowledging receipt of the Request and assigning it the reference number 2019-ICFO-23637. The response erroneously listed the date of reception of CLC's Request as December 3, 2018—nearly two months after the Request was received—and stated that there would be a delay in the processing of the Request. ICE also erroneously listed the date of the Request as November 2, 2018, rather than October 2, 2018. *See* Email from ICE to Danielle Lang (Dec. 7, 2018, 10:19 A.M.), attached as Ex. D to Pasternak Decl.

26. On December 11, 2018, ICE emailed CLC and said that it would "process [CLC's] request as expeditiously as possible." *See* Email from ICE to Moshe Pasternak (Dec. 11, 2018, 9:24 A.M.), attached as Ex. E to Pasternak Decl.

27. On December 21, 2018, CLC sent ICE a letter requesting a timeline for production of the requested documents and a formal decision on CLC's request for expedited processing. ICE did not respond to that letter. *See* Letter from CLC to ICE (Dec. 21, 2018), attached as Ex. F to Pasternak Decl.

28. On January 28, 2019, CLC emailed ICE-foia@dhs.gov again requesting an update on the status of the Request. *See* Email from Moshe Pasternak to ICE (Jan. 28, 2019, 2:37 P.M.), attached as Ex. G to Pasternak Decl.

29. On January 31, 2019, ICE emailed CLC indicating that documents responsive to the Request had been located and forwarded to ICE's FOIA office for review. ICE again said that it would "process [CLC's] request as expeditiously as possible," but again failed to provide any timeline for production. *See* Email from ICE to Danielle Lang (Jan. 31, 2019, 11:05 A.M.), attached as Ex. H to Pasternak Decl.

30. On March 7, 2019, CLC emailed ICE-foia@dhs.gov requesting an update on the status of the Request. *See* Email from Moshe Pasternak to ICE (Mar. 7, 2019, 2:30 P.M.), attached as Ex. I to Pasternak Decl.

31. On March 8, 2019, ICE emailed CLC and stated the following: "Your request is currently in the queue to be processed by an analyst. Requests are processed on a first in, first out basis and timing can vary greatly depending on the volume of responsive documents and the date the request was received." ICE's email did not provide any additional detail on the timeline for production of responsive documents. *See* Email from ICE to Moshe Pasternak (Mar. 8, 2019, 1:56 P.M.), attached as Ex. J to Pasternak Decl.

32. On March 12, 2019, CLC emailed ICE-foia@dhs.gov and requested an expected completion date for the processing of CLC's Request. CLC notified ICE that it was prepared to seek judicial relief if ICE did not promptly provide an expected completion timeline. *See* Email from Jonathan Diaz to ICE (Mar. 12, 2019, 4:43 P.M.), attached as Ex. K to Pasternak Decl.

33.     DHS's online FOIA tracker[15] displayed no information related to CLC's Request throughout this time. The tracker was finally updated on March 26, 2019 to reflect the Request. To date, the tracker erroneously states the Request's "Received Date" as December 3, 2018 and gives an estimated delivery date of January 9, 2019. *See* Screenshot of DHS FOIA tracker, https://www.dhs.gov/foia-status (last visited April 6, 2019), attached as Ex. L to Pasternak Decl.

34.     To date, ICE has provided neither an expected completion date nor a single responsive document in response to the Request.

35.     ICE has greatly exceeded the generally applicable twenty-day deadline for processing FOIA requests, as well as the possible ten-day extension that ICE may have granted itself for "unusual circumstance" under 5 U.S.C. 552(a)(6)(B)(i).

36.     CLC has exhausted the applicable administrative remedies with respect to its FOIA request. *See* 5 U.S.C. § 552(a)(6)(C)(i) ("Any person making a request to any agency for records . . . shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph.").

37.     ICE has wrongfully withheld the requested records from CLC.

## CAUSE OF ACTION

**Violation of the Freedom of Information Act for Wrongful Withholding of Agency Records**

38.     Plaintiff repeats and realleges paragraphs 1 through 37.

39.     Defendant has failed to make a determination with respect to Plaintiff's request within either twenty or thirty working days as required by 5 U.S.C. § 552(a)(6)(A)(i) and 552(a)(6)(B)(i).

---

[15] *Check Status of Request*, Dep't of Homeland Sec., https://www.dhs.gov/foia-status (last visited Apr. 8, 2019).

40. Plaintiff has exhausted all applicable administrative remedies with respect to Defendant's failure to comply with applicable time limits. *See* 5 U.S.C. § 552(6)(C)(i).

41. Plaintiff is entitled to injunctive relief with respect to the release and disclosure of the requested documents. *See* 5 U.S.C. § 552(a)(4)(B).

## REQUESTED RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Order Defendant ICE to disclose all responsive records not properly exempt from disclosure;

B. Order Defendant ICE to produce a *Vaughn* index for all documents it claims are exempted from disclosure;

C. Award Plaintiff CLC its costs and reasonable attorneys' fees incurred in this action; and

D. Grant such other relief as the Court deems just and proper.

Dated: April 11, 2019

By: /s/ Adav Noti

CAMPAIGN LEGAL CENTER
Adav Noti (DC Bar # 490714)
Danielle M. Lang (DC Bar # 1500218)
Jonathan M. Diaz*†
1101 14th Street NW, Suite 400
Washington, DC 20005
(202) 736-2200
anoti@campaignlegalcenter.org
dlang@campaignlegalcenter.org
jdiaz@campaignlegalcenter.org

*Counsel for Plaintiff*

**Motion for admission* pro hac vice *forthcoming*

†*admitted to practice only in the state of New York, supervision by Danielle Lang, a member of the DC Bar.*